No. 4.—John Whittington, plaintiff in error, *vs.* Doe ex dem. Wm. Wright and another, defendants.

[1.] Where two are in the joint occupancy of land, the one having no title, will, in the absence of all proof, be considered as holding in subordination to him who has the title.

[2.] Failure to record a deed, concerns no person, except those who derive title from the same feoffor, by a deed of subsequent date.

[3.] The claim laws are cumulative only , *permissive* and not *mandatory.*

[4.] Where a person having title to property, of which he is apprised, stands by and suffers it to be sold by the Sheriff, without asserting his title or making it known to bidders, he cannot afterwards set up his claim. And in such case, even infancy would be no protection, provided the minor had arrived at those years of discretion when a fraudulent intent could be reasonably imputed to him.

[5.] An adverse possession, held during the minority of the true owner, cannot operate against his right.

[6.] A conflict between the equities of a *bona fide* purchaser and a *volunteer,* can only arise where both parties claim under the same grantor.

Ejectment, in Crawford Superior Court.   Tried before Judge Stark.

This was an action of ejectment, brought upon the several demises of William Wright and James Pressnol, against John Whittington, who pleaded the general issue and the Statute of Limitations.   At the August Term, 1848, a trial was had, and a verdict rendered in favor of the plaintiff, and an appeal was taken by the defendant.   Pending the appeal, the defendant, James Pressnol, filed his bill in Equity, to perpetually enjoin the action of ejectment from proceeding.

The bill alleged that Wm. Wright gave in for a draw in the land lottery of 182–, and sold said draw to one Jacob Pressnol, of the County of Walton, for a valuable consideration; that Wright drew in said lottery lot of land No. 86, in the 2d district of originally Houston, now Crawford County, the same for the recovery of which the action of ejectment was instituted; that at the time of said transfer, there was a judgment against the said Jacob Pressnol and others, in favor of one Henry Millisons, open

and unsatisfied; that under a *fi. fa.* issued upon said judgment, the said lot of land was sold by the Sheriff of Crawford County, on the first Tuesday in January, 1834, when one John Walpole became the purchaser; that at said sale no notice was given that there was any outstanding title, or that the title was not in Jacob Pressnol, to said land. On the 18th day of January, 1834, Walpole conveyed lot of land to Whittington, the complainant. The bill further charged that complainant went into the possession of the land with the knowledge of Wright, Jacob and James Pressnol, and cultivated it from the year 1834. The bill further charged, that in the year 1823 or '4, Jacob Pressnol settled upon said land, and that shortly afterwards, William Wright moved upon the land.

Upon the coming in of the answer, which swore off all the equity in the bill, the Court dissolved the injunction, and ordered the action of ejectment to proceed.

By consent of counsel, the action of ejectment and bill were tried together at the February Term, 1850.

The plaintiff introduced in evidence a grant from the State to Wm. Wright, dated the 8th February, 1825—a deed of gift from Wm. Wright to James Pressnol, dated the 4th June, 1832.

The defendant introduced and read the bill and answer thereto; also a deed from the Sheriff of Crawford County to John Walpole, dated 7th day of January, 1834; a quit claim deed from Walpole to defendant, dated the 18th day of January, 1834. Much testimony beside was introduced, which it is not necessary here to give, except that it appeared that Jacob Pressnol and Wright went into possession together in the year 1823 or '4, and Pressnol continued in possession until 1834. It did not appear at what time Wright left the premises. The deed executed by him to James Pressnol recited his then residence in Merriwether County. It also appeared in evidence, that James Pressnol was an infant at the time of the execution of the deed of gift from Wright to him.

Counsel for defendant requested the Court to charge the Jury, that if the plaintiff in ejectment had notice of the sale by the Sheriff, and failed to produce his title on the day of sale and give no-

tice thereof to the bidders at the sale, the deed of gift from Wright to James Pressnol not being recorded, plaintiff is in Equity estopped from asserting his title against the defendant, provided the Jury believed, from the testimony, that defendant had no actual notice of plaintiff's deed from the grantee, and that notice by the Sheriff's advertisement of sale was sufficient to charge the plaintiff. The Court refused so to charge.

The defendant also requested the Court to charge the Jury, that if they believed, from the testimony, that the defendant was a *bona fide* purchaser for value, without notice, that Equity will protect him, even though his vendor may have had notice. The Court refused so to charge, but did charge, that the defendant in this case was in no better condition than Walpole. The counsel for defendant also requested the Court to charge the Jury, that if they should believe that Whittington was a *bona fide* purchaser for value, he was, under the circumstances, to be preferred to a volunteer; that the lessor of plaintiff is a volunteer against a creditor or subsequent purchaser for value, unless he paid a valuable consideration for the deed of gift. The Court refused so to charge, but did charge, that a *bona fide* purchaser, without notice, may be protected, under such circumstances, against an equitable title; that such a purchase can never operate as a protection against a legal title, and the Court further charged, that the doctrine, as to volunteers, did not apply.

The Court also charged the Jury, that defendant, by the purchase at Sheriff's sale, only became the owner of Jacob Pressnol's title—alleged to be a perfect one under the Statute of Limitations; that in order to make that title a good one, it must have been shown that Jacob Pressnol had been in the peaceable and adverse possession of the land, under claim of ownership, for seven years previous to the sale; that if Wright and Jacob Pressnol were both in possession of the land together, that the law would consider, in the absence of proof to the contrary, that the possession was the possession of the one who had the title; that while they lived together on the land, if the title was in Wright, and the possession was otherwise unexplained, the law would consider Pressnol's possession subordinate to Wright's title, and not as

adverse to it; that a possession, to be available under the Statute, must be exclusive of the possession of any one else, except the alleged owner and those claiming under him; that the joint possession of Pressnol and Wright could not operate so as to vest the title in Pressnol under the operation of the Statute, unless Pressnol claimed adversely to Wright, and to make Pressnol's possession adverse to Wright's, he must have had either the exclusive possession, or Wright must have held under him.

To which charge, and refusals to charge, the defendant excepted, and error was assigned.

HUNTER, HALL and HAMMOND, for plaintiff in error.

POE and NISBET, for defendants.

*By the Court.*—LUMPKIN, J. delivering the opinion.

An action of ejectment was brought to the February Term, 1848, of the Superior Court of Crawford County, upon the several demises of William Wright and James Pressnol, against James Whittington, for lot No. 86, in what was originally the 2d district of Houston, but now Crawford County. The general issue, and the Statute of Limitations were pleaded. On the final trial, the plaintiff tendered in evidence a grant from the State to William Wright, dated in February, 1825, and a deed of gift from the grantee to James Pressnol, dated in June, 1832, proved possession in the defendant, the value of the rent, and closed his case. The defendant relied on Sheriff's title. It seems that this same lot of land was sold under execution the first Tuesday in January, 1834, as the property of one Jacob Pressnol, bought by one John Walpole, to whom a deed was made, and who, on the 18th day of the same month executed a quit claim conveyance to James Whittington, the defendant, who was the Sheriff that sold the land. Whittington proved that Jacob Pressnol, together with William Wright, the grantee, and one Kelly, went into possession of the premises in 1823 or 1824, before the land was granted, and that Jacob Pressnol remained there, making im-

provements, and exercising acts of ownership, up to the time of sale in 1832, by the Sheriff, and that Whittington had been in possession ever since. At what time Wright left the land, does not appear. The deed which he made to James Pressnol in 1834, recites, that he was then a citizen of Merriwether County. To aid in the defence of the action at law, Whittington filed a bill setting forth the foregoing facts, and charging that the conveyance to James Pressnol was fraudulently made to defeat the creditors of Jacob Pressnol, who, it was alleged, was the purchaser of the draw of William Wright in the lottery. It further charged a want of notice, actual or constructive, of the claim of James Pressnol, when the land was bought at Sheriff's sale. It prayed a perpetual injunction against the action of ejectment. The answer denied all the equity in the bill, and both cases were submitted to the Jury at the same time.

The presiding Judge instructed the Jury, that if the *fi. fa.* which sold the land had been levied on it as it was, and a claim had been interposed by William Wright, and they would have found the property subject, that their verdict in the present issue should be for the defendant; and further, that if the creditors of Jacob Pressnol could have condemned this land to the payment of *his* debts, that their finding should be for Whittington; that if they believed, from the testimony, that Jacob Pressnol had seven years' continued and adverse possession of the land previous to the sale by the Sheriff, that the legal title was vested in him, and that the purchaser at Sheriff's sale, Walpole, and Whittington, his vendee, acquired a good title.

[1.] That if Wright and Jacob Pressnol were in the joint occupancy of the land, that in the absence of all proof to the contrary, the law would construe it to be the possession of him who held the title, and that Pressnol's possession was in subordination to the title of Wright, and not advsrse to it; that a possession to be available under the Statute, must be exclusive of the possession of any one else, except the alleged owner, and those claiming under him; that the joint possession of Wright and Pressnol could not operate to defeat Wright's title, unless Pressnol claimed adversely to Wright.

I have repeated the substance of that portion of the charge which relates to the actual fraud which might be connected with this transaction, as well as to the Statute of Limitations, and we think that it was not only full, but exceedingly clear and discriminating, and should have been altogether satisfactory to the defendant.

[2.] But it is complained that the Court ought to have instructed the Jury, as it was asked to do, that the failure to record the deed from Wright to James Pressnol, until after the purchase by Whittington, and no actual notice being given of this title, was a fraud upon the defendant, and that James Pressnol, although a minor, was bound, at his peril, to take notice of the Sheriff's advertisement, and to have forbidden the sale. Such is not our understanding of the law. It was neither the duty of William Wright, James Pressnol, nor any body else, to notify the purchaser at Sheriff's sale, that the defendant in execution had no title to the property which was selling. *Caveat emptor*—let a purchaser beware what he does—is the correct doctrine. It is the duty of bidders to inform themselves—to search the records—to exercise all proper caution, that they may not be ignorant of the amount and nature of that person's interest which they are about to buy. *Qui ignorare non debuit quod jus alienum emit.*

[3.] Our claim laws are cumulative, *permissive* and not *mandatory.* They do not take from the owners of property their right to assert their title by trover or ejectment or trespass against the Sheriff, as at Common Law; and a sale by the Sheriff cannot divest the owner of his title, unless he does, or omits to do something, and thereby entraps the purchaser.

[4.] If he is present, and his property is offered for sale, and he stands by and encourages the sale, *or does not forbid it,* and thereby another is induced to purchase the estate, under the supposition that the title is good, neither the owner nor his privies, under such circumstances, will be at liberty to dispute the validity of the purchase. 1 *Fonb.* 163, 164. And even *infancy* will constitute no excuse for such conduct; for infants are not privi-

leged to practice deceptions or cheats on innocent persons.   9 *Mod.* 33.

[5.] But James Pressnol was in a distant County on the day of sale, and knew nothing of what transpired · until long subsequently.   Neither the rights of infants nor adults would be affected under such circumstances.   1 *Story's Eq. Jur.* §§385, 386.

As to the failure of James Pressnol to have his deed from William Wright recorded, what has that to do with the case?   Had his conveyance been from Jacob Pressnol, the defendant in execution, there would have been force in the objection.   But the doctrine of registration has no application, we apprehend, to a case like this.   What insight could the registration of the deed, from Wm. Wright to James Pressnol, have given any body, as to Jacob Pressnol's title to this land, between whom and the other two parties, the records showed no privity in estate?   Had the records shown title at any time in Jacob Pressnol, then it would have been right and proper that the records should have shown title out of him, but it is sufficient to suggest that James Pressnol does not derive title through Jacob Pressnol, but Wm. Wright, the grantee of the land from the State of Georgia.   In *Roe and others vs. Doe ex dem. Neal,* (*Dudley's Rep.* 170,) it was decided that the deed, not being recorded, concerns no persons except those who derived title from the same feoffor by a deed of subsequent date to that under which the party claims title.

[6.] But there is another point.   Counsel for the plaintiff in error desire to treat Whittington as a *purchaser for value,* and James Pressnol as a *volunteer,* and consequently contend, that in the absence of notice, the former is to be preferred.   The answer to ·be made to this argument is, that admitting Whittington to be the *bona fide* purchaser of Jacob Pressnol's title, how does that give him any preference over a volunteer under William Wright?

The truth is, both parties here are standing on their legal title; the one by *paper,* the other by the *Statute;* and the only question is, which shall prevail?   And believing, as we do, that the law of the case has been fairly and forcibly given to the Jury, we do not see that justice requires that a new trial should be granted.