(January 23, 1896.)

## FALK-BLOCH MERCANTILE COMPANY v. BRANSTETTER, SHERIFF.

[43 Pac. 571.]

LEVY OF WRIT OF ATTACHMENT—CHATTEL MORTGAGE—PRIORITY OF LIEN—POSSESSION AND CUSTODY OF PROPERTY.—Under the levy of a writ of attachment on personal property, if the custody and possession thereof is such as to enable the officer to hold the property and subject it to the order of the court issuing the writ, it is sufficient to create a lien thereon prior to a lien of a chattel mortgage executed and filed subsequent to making the levy of the writ, but prior to taking actual possession of all of the property on which said writ was levied, provided the officer proceeds with reasonable diligence to reduce all of such property to his actual possession and does so reduce it.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Hawley & Puckett, for Appellant.

The court instructed the jury that there was a valid levy on the twenty-four logs on the bank of the river prior to the filing of the mortgage; hence it necessarily follows that the mortgage is absolutely void as to those twenty-four logs, and, if void in part, the mortgage is void in whole. (*Wilson v. Voight*, 9 Colo. 614, 13 Pac. 726; *Horton v. Williams,* 21 Minn. 187; *Russell v. Winne,* 37 N. Y. 591, 97 Am. Dec. 755.)   There was a valid existing lien before and at the time the mortgage was filed and became a lien.   The return of the sheriff, which is *prima facie* evidence of the recitals therein, shows that the attachment was made at 10 o'clock A. M. on May 10, 1893.   The mortgage itself shows that it was filed with the recorder of Ada county, Idaho, at ten minutes past 11 o'clock A. M. May 10, 1893, and it is not disputed, so it must be admitted that the levy of attachment was made just one hour and ten minutes before the mortgage in question was filed with the county recorder.   Such mortgage was not binding except as between the parties until the same was filed, although they had actual notice of its existence. (*Baxter v. Smith,* 2 Wash. Ter. 97, 4 Pac. 35; *Ramsey v. Glenn,* 33 Kan. 271, 6 Pac. 265; *Jewell v. Simpson,* 38 Kan. 362, 16

Pac. 450; *Beamer v. Freeman,* 84 Cal. 554, 24 Pac. 169; *Standard Imp. Co. v. Parlin and Ordandoff Co.,* 51 Kan. 566, 33 Pac. 363; *Farmers' etc. Bank v. Anthony,* 39 Neb. 343, 57 N. W. 1029; *Smelser v. Baker,* 6 Tex. Civ. App. 751, 26 S. W. 905.) The levy of attachment was a legal one, taking into consideration the nature of the property. The character of the property must be considered. The law does not require impossibilities, and does not require that the same acts shall be done in levying upon ponderous or immovable property as upon property upon which a complete and visible change of possession may be easily consummated. (Idaho Rev. Stats., subd. 3, sec. 4307; *Farrington v. Sinclair,* 5 Johns. 428; *Crisman v. Dorsey,* 12 Colo. 567, 21 Pac. 920; *Throop v. Maiden,* 52 Kan. 258, 34 Pac. 802; *Lyeth v. Griffis,* 44 Kan. 159, 24 Pac. 59; Drake on Attachment, 256.)   Possession is sufficient to preserve an attachment lien, if the officers retain control over the property attached. (*Hemmenway v. Wheeler,* 14 Pick. 408, 25 Am. Dec. 411; *Mills v. Camp,* 14 Conn. 219, 36 Am. Dec. 488; *Nichols v. Patten,* 18 Me. 231, 36 Am. Dec. 713.)   It is shown that of the amount specified in the mortgage only $421.53 was due the mortgagee; we therefore contend that the mortgage being given for a greater sum than was due, was void. (*Bailey v. Burton,* 8 Wend. 339; *Divver v. Mc-Laughlin,* 2 Wend. 596, 20 Am. Dec. 655; *Tully v. Harloe,* 35 Cal. 302, 95 Am. Dec. 102.)

George H. Stewart and S. L. Tupton, for Respondent.

The mortgagors, Lawson and Williams, were indebted to plaintiff, C. S. McConnell & Co., and many laborers who assisted in creating the property covered by the mortgage, and taken under the writ of attachment, and were unable to pay their debts. A person largely in debt and unable to pay may prefer a creditor, even though by so doing he thereby defeats the collection of other debts, and the creditor is aware of such facts. (*Wheaton v. Nevill,* 19 Cal. 41; *Ross v. Sedgwick,* 69 Cal. 247, 10 Pac. 400; *Dyer v. Bradley,* 69 Cal. 557, 26 Pac. 1103; *Wood v. Franks,* 67 Cal. 32, 7 Pac. 50; *Dana v. Stanford,* 10 Cal. 369.) The plaintiff may have known that an attachment had issued against the mortgagors at the time the mortgage was executed to plaintiff, yet that would not render the

mortgage fraudulent. (*Wheaton v. Nevill,* 19 Cal. 42; *Ross v. Sedgwich,* 69 Cal. 247, 10 Pac. 400; *Lewin v. Hopping,* 67 Cal. 541, 8 Pac. 73-75.) There was no fraud in giving the mortgage in controversy. It covered twenty-four poles the mortgagors had no right to encumber, but these twenty-four poles are not in controversy in this case. A chattel mortgage is nothing more or less than a sale of personal property made to secure an indebtedness. (*Moore v. Murdock,* 26 Cal. 515.) The officer must reduce the property to his control, and his acts must be such that except for the protection of the writ, he would be liable as a trespasser. (Rev. Stats., sec. 4307; *Lynch v. Griffis,* 44 Kan. 159, 24 Pac. 59; *Rix & Stafford v. Silknitter,* 57 Iowa, 262, 10 N. W. 653; *Crisman v. Dorsey,* 12 Colo. 567, 21 Pac. 920; *Kiesel v. Union Pac. R. R. Co.,* 6 Utah, 128, 21 Pac. 499; *Herron v. Hughes,* 25 Cal. 556; *Hollister v. Goodale,* 8 Conn. 332, 21 Am. Dec. 677; *Taffts v. Manlove* 14 Cal. 48, 73 Am. Dec. 610; Waples on Attachment, 174 et seq.) The mortgagors had a right to give a mortgage to plaintiff for a *bona fide* debt due the plaintiff, and also to cover an indebtedness due others. As to the others, plaintiff was the trustee. The mortgage was not for that reason fraudulent. (*Wood v. Franks,* 67 Cal. 32, 7 Pac. 50; *Saunderson v. Broadwell,* 82 Cal. 132, 23 Pac. 36.)

SULLIVAN, J.—This action was brought by the Falk-Bloch Mercantile Company against H. C. Branstetter, as sheriff, to recover the sum of $850 as damages alleged to have accrued by reason of the levy and seizure, under a certain writ of attachment, in the suit of *McConnell v. Lawson and Williams,* of certain electric light poles, upon which the respondents, the Falk-Bloch Mercantile Company, claimed to have a lien by reason of a certain chattel mortgage. The defense was that the chattel mortgage was given to defraud creditors of the mortgagors, and that the seizure of said poles, under said writ of attachment, was made prior to the filing of said chattle mortgage. The cause was tried by the court with a jury, and resulted in a verdict and judgment for plaintiff in the sum of $750. A motion for a new trial was overruled. This appeal is from the judgment and order denying the motion for a new trial.

The following facts appear from the record: Suit was
brought by one C. S. McConnell against J. H. Lawson and Ben
Williams, in the probate court of Ada county, and a writ of
attachment issued.   On May 8, 1893, said writ was placed in
the hands of Branstetter, as sheriff, for service.   It appears
that said Lawson and Williams had several hundred telephone
and electric light poles, all of which, except twenty-four, were in
Boise river, between what is known as the "Upper Boise Wagon
Bridge" and the mouth of Moore's creek, a distance of about
twenty miles, which poles were being floated down said river
to said bridge, and, when they reached the bridge, were being
taken out and piled on the bank of the river by Lawson and
Williams.   That on the evening of the 9th of May, 1893, the
said sheriff went to said bridge and served the summons in said
suit of *McConnell v. Lawson and Williams* on said defendants,
and levied said writ of attachment on twenty-four of said poles,
which he found piled on the bank of the river near said bridge.
Thereupon Lawson and Williams informed the sheriff that, "if
that is the way they are going to act, we will have nothing
more to do with them [the poles]," and left the place.   The
sheriff put a man in charge of said twenty-four poles after mak-
ing the levy.   On the following morning, May 10th, the sher-
iff sent his deputy, Mr. Duncan, to said bridge, and it appears
from his testimony that he went to said bridge and found one
C. C. Allen there, and informed him that he had come, as dep-
uty sheriff, to attach the logs in the river, and that he appointed
Allen keeper, with instructions to take possession of the logs
in the name of the sheriff, as they came down the river, and
agreed to pay him three dollars per day for his services.   The
return on the writ of attachment shows that the writ was
served at 10 o'clock A. M., on May 10, 1893.   That thereafter
the men employed by the sheriff began taking said poles from
the river (as in floating down the river they reached a point
at or near said bridge), and continued so to do until all of said
poles were taken therefrom.   It appears from the testimony of
Charles McConnell that he went with the deputy sheriff, Dun-
can, on the morning of May 10, 1893, to the bridge above re-
ferred to; that they arrived there between 9 and 10 o'clock A.

M. of that day; that, when they arrived, these men were out in the river catching logs; that they signaled them to come in, and, when they came, the deputy sheriff instructed said Allen to employ men to take the logs out of the river, and appointed him (Allen) foreman. It appears that said poles had been put in Boise river at or near the mouth of Moore's creek for the purpose of floating them down said river to Boise City, to be disposed of there for electric light purposes. The record shows that, after the service of the summons to Lawson and Williams, on the evening of May 9, 1893, they gave no more attention to the banking of said poles, that they went to Boise City, and between 10 and 11 o'clock A. M. of the tenth day of May, 1893, executed the chattel mortgage, above referred to, to the Falk-Bloch Mercantile Company, to secure the payment of $750; that said mortgage was filed in the office of the county recorder of Ada county at ten minutes after 11 o'clock on said tenth day of May, and within half an hour thereafter the sheriff was notified that said mortgage had been executed and filed. The main contention of appellant is that the writ of attachment was levied, and that there was a valid subsisting lien thereunder, on said poles, before the chattel mortgage became a lien thereon; while the respondent contends that the lien under the writ was valid as to the twenty-four poles found on the bank of the river, but that it was not valid as to the poles which were floating down the river at the time the mortgage was filed in the recorder's office.

The poles were put in the river twenty miles or more above the point where it was intended that they should be and were taken out, and while floating down the river were scattered along the river for that distance. Men with skiffs were guarding the river at the latter point, and catching and banking the poles as they arrived. Twenty-four poles had been taken out and banked at the time of the levy of said writ, and thereafter the employees of the sheriff took entire charge and control of said work, and prosecuted it with reasonable diligence until actual possession was taken of all of said poles. Subdivision 3 of section 4307 of the Revised Statutes (which section provides the manner of levying writs of attachment), is as follows: "Personal property, capable of manual delivery must be attached by tak-

ing the same into custody." I think the acts of the sheriff in in this case, in making the levy of the writ, taking into consideration the situation and location of said property, and the diligence exercised by him in taking them into actual possession, show a sufficient compliance with the provisions of said section to create a lien upon the personal property referred to prior to that created by said mortgage. The most of said property consisted of loose poles floating down Boise river, and scattered along the river for a distance of twenty miles above said bridge. The sheriff took actual possession of twenty-four of said poles that had been taken out of the river and banked, and employed men to catch and bank the remainder as they arrived at said bridge. After the banking of said twenty-four poles and the service of the summons, the owners quit the work that was necessary to save the poles still in the river, and left the sheriff in complete control thereof. They went to Boise City and there sought to defeat the attachment by executing the chattel mortgage above referred to. When said mortgage was given, the mortgagee and mortgagors all knew that many of said poles were floating down said river. They made no effort to bank them, and thus save them, nor offered so to do. Apparently, they were perfectly willing that the sheriff should do that at his own expense, and, in case he failed to produce them, on demand, to satisfy the conditions of said mortgage, they would hold him for their value. But, regardless of these facts, I think the custody acquired by the officer was such as to enable him to hold said property, and subject it to the order of the court that issued the writ, and to create a lien thereon prior to that of said mortgage. (See *Hemmenway v. Wheeler,* 14 Pick. 408, 25 Am. Dec. 411; *Mills v. Camp,* 14 Conn. 219, 36 Am. Dec. 488.) In our view of this case, it is not necessary for us to pass upon all of the errors assigned, as the view above expressed indicates that the lien under the attachment was prior to that of the chattel mortgage. The judgment of the court below is reversed, with instructions to that court to enter judgment in favor of the appellant, Branstetter, in accordance with the views expressed in this opinion. Cost awarded to appellant.

Morgan, C. J., and Huston, J., concur.