### 28007. ATLANTIC COMPANY v. FARRIS.

Decided March 15, 1940. Rehearing denied March 30, 1940.

*Dykes, Bowers & Dykes,* for plaintiff in error.

*Fort, Fort & Fort,* contra.

STEPHENS, P. J. Mrs. Florence Farris brought suit against the Atlantic Company and M. H. Pruitt, seeking to recover the actual damages sustained, together with punitive damages, because of an alleged trespass by the defendants in causing certain personal property belonging to Mrs. Farris to be seized under an attachment sued out against her non-resident husband, based on a debt due to the Atlantic Company by the plaintiff's husband, at a time when the plaintiff was out of the State, and, after obtaining judgment in the attachment proceedings, causing a part of the property to be sold, and in restoring to the plaintiff the other part of the property seized, in a damaged condition, when the defendants had knowledge at the time of the seizure and at the time of the sale that this property belonged to the plaintiff and not to her husband. She alleged that she was entitled to recover the actual value of the furniture "taken, carried away, and sold," in the sum of $876.40, the damage to other furniture, caused by removing it from storage

and thereafter returning it, in the sum of $240, and punitive or exemplary damages in the sum of $5000. The court overruled the defendants' general and special demurrers to the plaintiff's petition as amended. To this judgment the defendants excepted pendente lite, and error is assigned on such judgment. The case came on for trial and was dismissed as to the defendant Pruitt.

The following appears from the evidence: At the time the attachment was sued out against the husband of the plaintiff she was in New York City, and the personal property seized thereunder, to wit, furniture which had been purchased by the plaintiff with her own money and which belonged to her, had been stored with P. L. Wooten in Americus, Georgia, and a storage receipt therefor had been issued in the name of Mrs. Farris and delivered to her by Wooten. This attachment was sued out in behalf of the defendant by its attorney in Americus. On December 23, 1937, the plaintiff, through her attorneys in New York City, informed the defendant's attorney in Americus, by telegram, that the furniture seized by his client, Atlantic Company, for the indebtedness of Mr. Farris, belonged to Mrs. Farris. In this telegram the attorneys for Mrs. Farris informed the defendant's Americus attorney, that if the furniture was not released but was sold under the attachment, necessary steps would be taken to "indemnify" Mrs. Farris. This telegram was in response to a letter written to Mrs. Farris by the defendant's Americus attorney, on December 17, 1937, informing her that the furniture stored with Wooten had been attached by his client as the furniture of her husband, and that her husband was indebted to that company. After sending the telegram the attorneys for Mrs. Farris wrote a letter to the attorney for the defendant, advised him of Mrs. Farris's title to the furniture, and enclosed in the letter affidavits and bill of sale in support thereof. Part of this furniture was returned to Wooten, and was later returned to the plaintiff in a damaged condition as a result of the hauling and handling thereof under the direction and command of the defendant. The greater part of the furniture was sold under the attachment proceedings, after judgment therein had been obtained against the plaintiff's husband. It appeared from the testimony of the officer who had levied the attachment that he had been advised by some one at the time that the furniture did not belong to the defendant in attachment, the plaintiff's husband; that the

storage man told him (the witness) that this furniture was stored in the name of Mrs. Farris; that he reported this finding to the attorney for the defendant, stating, "You don't want to get in no sweat about this;" and that the defendant's attorney responded, "I will take care of you; there will be no sweat to get in." There was no evidence in support of the item of $250 actual damages claimed by the plaintiff on account of hauling away and returning the furniture to the storage-house; and the court instructed the jury not to consider this item of damage.

The plaintiff further testified, in part, as follows: "I stored my furniture with Mr. Paul Wooten's place in Americus. . . I did not get back one small rug, $6, one small rug, $6, one coffee table, $14.50, one Philco radio, $172.50, one magazine rack, $29.50, one cotton mattress, $39.50, one table lamp, $7.95, one floor lamp, $10, one overstuffed chair, $75, one small rug, $6, large rug, $192, one small rug, $6, one rug, $37, and one large rug, $49, 2-piece living-room suite, $200, one bookcase, $15, one floor lamp, $10. I have totaled that amount up; the total value of the furniture I lost was $876.40. . . I had been using that furniture ever since . . 1935. It was not brand-new furniture, but was not considered old; it was used furniture, and so far as the value is concerned any value that was put on it had to be put on it as used furniture and not new furniture. I don't know what that value is. . . That furniture was in good condition when I stored it with Mr. Wooten. I had taken good care of it in using it. The value of that furniture I testified to was what I paid for it. I would say it was practically new when I stored it with Mr. Wooten. I know it would not be valued at much less; would not be worth much less than that, because I left them with Mr. Wooten without a scratch on them or nothing. To my knowledge I say it was worth $846.40 when I stored it with Mr. Wooten." P. L. Wooten testified for the plaintiff, as follows: "I attended the sale of that furniture and saw that furniture when it was sold. I considered the furniture in very good shape, and bought two or three pieces; I considered it good furniture, very nice." There was no other evidence concerning the value of this furniture. There was no evidence by the defendant seeking to dispute the plaintiff's valuation of the furniture lost by her as a result of the levy of the attachment and sale thereunder. There was evidence that the defendant in attachment,

the plaintiff's husband, had procured in his own name a policy of insurance on the furniture involved.

The jury returned a verdict for the plaintiff for $1272.44. The defendant moved for a new trial on the general grounds, and by amendment added special grounds. The judge overruled the motion and the defendant excepted.

■ The defendant insists that the court erred in overruling its general and special demurrers to the petition as amended. It is urged that the petition failed to show that any agent of the defendant acted for it and within the scope of his authority in attaching and selling the plaintiff's alleged furniture, and failed to show any facts authorizing the recovery of punitive damages. It appears from the petition as amended, that the company's principal place of business was in Fulton County; that Pruitt was manager of the business of the company in Sumter County; that the husband of the plaintiff was indebted to the company, and this claim was turned over to a local attorney for collection; that this attorney sued out an attachment against the plaintiff's husband, who was a non-resident of this State; that the attorney, in suing out the attachment, causing the furniture of the plaintiff to be seized thereunder, and in bringing the furniture to sale after judgment, was acting within the scope of his authority as agent and attorney for the company; and that the officer levying the attachment was acting under the direction of this attorney, who had authority from his client. One who authorizes or directs his attorney to sue out a writ of attachment, and ratifies his act in so doing, is liable in damages in case the attachment proves to be wrongful. 6 C. J. 504; 7 C. J. S. 668. An attorney employed to collect a claim by suit has authority to cause an attachment to be issued thereon, and his client may be held responsible when the attachment is unjustifiable. 6 C. J. 647. A client is liable to a third person who is injured by the act of his attorney, done in the execution of matters within the attorney's authority, such as the issuance of an attachment where the attorney has been employed to collect a claim. 6 C. J. 671; *Parker* v. *Home Mutual Building & Loan Asso.*, 114 *Ga.* 702 (40 S. E. 724). Where the relation of attorney and client exists, the client is bound, according to the ordinary rules of agency, by the acts of his attorney within the scope of the attorney's authority. Accordingly, the client may be liable for a trespass com-

mitted by his attorney that he in no way authorized except by his general employment of the attorney, or for the tortious institution, continuation, or prosecution of legal proceedings to enforce the client's claim. 5 Am. Jur. 298, § 67; Am. Law Inst. Restatement, Agency, 564, § 253. A client may be liable where his attorney, in the course of his employment, causes an attachment to be sued out against the debtor of the client, and levied on property of one other than the debtor, as the property of the debtor. *Williams* v. *Inman,* 1 *Ga. App.* 321 (57 S. E. 1009). Where it appeared that the attorney knew, or had reasonable grounds for believing, that the property attached, and afterward sold under judgment against the debtor on the attachment, did not belong to the debtor, but to the debtor's wife, the attorney was chargeable with notice of the wife's title, and notice to him would be notice to his client. *Jones* v. *Lamon,* 92 *Ga.* 529 (18 S. E. 423); *Citizens Bank of Vidalia* v. *Citizens &c. Bank,* 160 *Ga.* 109 (4), 118 (127 S. E. 219).

It is alleged that the attachment in this case was sued out by the attorney of the defendant company, and that the property was seized thereunder and thereafter sold with knowledge that it belonged to the plaintiff and not to the defendant in attachment. In such case the attorney's client may be liable in an action by the wife against the client for the actual damages sustained by her as a consequence of the levy and subsequent sale, and may be subject also to exemplary or punitive damages, if either in the act or the intention the tort was attended with circumstances of aggravation. *Jones* v. *Lamon,* supra; *Investment Securities Corporation* v. *Cole,* 57 *Ga. App.* 97 (194 S. E. 411), s. c. 186 *Ga.* 809, 810 (199 S. E. 126). This would result in a case where the attorney was not ignorant of the wife's title at the time of the levy of the attachment and the sale of the property thereunder. *Jones* v. *Lamon,* supra; *Investment Securities Cor.* v. *Cole,* supra. It further appears from the allegations of the petition as amended, that the company accepted the proceeds of the sale of the plaintiff's furniture under the attachment and applied them to the payment of the debt due to it by the plaintiff's husband, and that this was "done with actual knowledge that title to the said property was in the said Mrs. Florence Farris." Applying the foregoing principles, the petition was not subject to any of the grounds of demurrer, general or special, and the court correctly so ruled.

■ The plaintiff proved actual damages to her, in so far as the value of the furniture sold under the attachment process was concerned. The value of personal property may be established from facts and circumstances as well as by direct evidence of value. See *Farm Products Co.* v. *Eubanks,* 29 *Ga. App.* 604, 607 (116 S. E. 327) ; *Landrum* v. *Swann,* 8 *Ga. App.* 209 (68 S. E. 862) ; *Atlantic Coast Line R. Co.* v. *Harris,* 1 *Ga. App.* 667 (57 S. E. 1030). The plaintiff testified as to the value of each article lost by the levy and sale of her furniture by reason of the attachment, and these sums totaled $876.40. She testified, that she had purchased the property in 1935; that while it was not new, the furniture was not considered old; that so far as the value was concerned, "any value that was put on it had to be on it as used furniture, and not new furniture;" that she did not know what that value was; that the furniture was in good condition when she stored it; that she had taken good care of it; that it was practically new when stored; that she knew it would not be valued at much less, would not be worth much less, because she left it with Wooten without a scratch on it; and that to her knowledge she would say that it was worth $846.40 when stored. The testimony of Wooten, in whose possession it was when seized under the attachment, was that he considered it good furniture in very good shape, and that at the attachment sale he bought two or three pieces for his own use. In *Watson* v. *Loughran,* 112 *Ga.* 837 (3) (38 S. E. 82), and in *Coffee* v. *Worsham,* 31 *Ga. App.* 62, 65 (119 S. E. 665), it was held, that while the cost of property may be considered in connection with other facts in determining its value, evidence of its cost, without more, is not sufficient proof of its market value; that it is a matter of common knowledge that the value of a used article becomes somewhat abated by use. Under the testimony of the plaintiff the furniture was not worth as much in its used condition as it was when new. She testified as to what it was worth when new, just what it cost, that it had been used but was in an almost new condition, that she did not know what it was worth in such slightly used condition, and that it was worth $846.60 when she stored it. The testimony of another witness was that the furniture was in a good, almost new condition. The plaintiff having testified as to what her furniture was worth when bought, and that when it was seized under the attachment process it was in excellent

condition, practically new, and worth almost as much as it was worth when bought, and as to what it was worth when it was stored, the jury was not without evidence on which to base a verdict as to the value of the property when sold under the attachment.

The verdict was not contrary to the law and the evidence, in that, as contended by the defendant, it awarded to the plaintiff punitive damages, and that such award was based "solely and exclusively on the fact that the title to the property levied on was in the plaintiff and was not in her husband . . against whom the attachment proceeding was levied." There was evidence authorizing the jury reasonably to infer that the defendant, through its attorney, had knowledge that the property seized belonged to the plaintiff; that at the time of the levy the attorney who was handling the claim against the plaintiff's husband and suing out the attachment was informed that the property levied on was not the property of the defendant in attachment but was the property of the plaintiff in the case; that the levying officer, before making the levy, questioned this attorney about this matter, and was informed by the attorney to go ahead with the levy and he would take care of him in the matter; that after the levy and before the sale this attorney was informed by the attorneys for the plaintiff that the furniture levied on was the plaintiff's property, and a bill of sale and affidavits to that effect were furnished the attorney for the defendant; and that this attorney was notified that if the property was not released the necessary steps to secure indemnity for the plaintiff would be taken. Under the principles of law stated in *Jones* v. *Lamon,* and *Investment Securities Corporation* v. *Cole,* supra, a verdict for the plaintiff for exemplary or punitive damages was authorized. The fact that the husband of the plaintiff had taken out insurance on this furniture in his own name, and that the furniture, before it was stored with Wooten in the name of the wife, had been located in a house in which the husband and the wife lived, do not, as contended by the defendant, show as a matter of law that the jury were not authorized to find punitive damages. It is true that the attorney for the plaintiff in attachment testified that he in good faith instituted the attachment proceedings, caused the levy to be made on this furniture as the property of the plaintiff's husband, and prosecuted the case to judgment and sale of the property; and that if he had known that

the property belonged to the plaintiff, and not to her husband, he would not have done so. The jury could well have found against exemplary damages under this testimony; but under all the evidence they were authorized to find punitive or exemplary damages. Under the Code, § 105-2002, a "personal tort" need not be committed by the wrong-doer before "additional damages" can be awarded, where there are aggravating circumstances either in the act or in the intention. In *Stovall* v. *Caverly*, 139 *Ga.* 243, 246 (77 S. E. 29), the court was not dealing with such a case as here presented, or as presented in *Jones* v. *Lamon*, supra. See Code, § 105-2003, and cases cited in the note. The *Caverly* case fell under the Code, § 105-2003, and the entire injury there alleged by the plaintiff was to peace, happiness, and feelings, while in the case at bar, and in *Jones* v. *Lamon*, supra, there was actual damage to personal property, and the plaintiffs were seeking "additional damages." The verdict for the plaintiff was authorized by the evidence. It was not contrary to law, and a verdict for the defendant was not demanded.

■ The fact that the landlord of the plaintiff's husband had levied a distress warrant on this same furniture in an effort to collect rent from the plaintiff's husband was insufficient to show that this furniture did not belong to the plaintiff. The evidence was properly excluded. It was hearsay only.

■ The testimony of the officer who levied the attachment on this furniture, that he stated at the time to the attorney for the defendant (the plaintiff in attachment) "You don't want to get in no sweat about this," and that this attorney replied, "I will take care of you; there will be no sweat to get in," was properly admitted in evidence. It was material as tending to show that the attorney, in acting for the defendant company, had knowledge as to whether this furniture belonged to the plaintiff at the time the attachment was levied.

■ The court did not err in charging to the jury the provisions of the Code, § 105-2002, on the ground urged by the defendant that there was no evidence to sustain any charge on the question of aggravating circumstances either in the act or in the intention, and that there was no evidence of any kind by which there could be the slightest inference of any aggravating circumstances, wilful misconduct, malice, fraud, wantonness, or oppression; and

because such charge was "prejudicial, and had a strong tendency to lead the jury to believe that, because the property was levied on at all, they could believe that such levy of itself would be sufficient to warrant the recovery of punitive damages."

■ The court did not err in charging the jury as follows: "If you believe that it [the furniture levied on] belonged to the wife, and if the attorney for the defendant company knew or had reasonable grounds for believing that it did belong to her before it was sold, he was chargeable with notice of the plaintiff's title; and notice to him, the attorney, would be notice to his client, the defendant company, in this case." See *Jones* v. *Lamon, Citizens Bank* v. *Citizens &c. Bank,* supra. Such charge was not error on the ground that "if there was any trespass committed, it was at the time of the levy, and not at the time of the sale of the property, and the notice, to be such as would bind the Atlantic Company in this case, as contended, would have to be shown to the attorney or other officials of the company at the time of or before the levy, and whatever notice may have come after the levy would not and could not constitute trespass." The jury were authorized to find that the attorney for the defendant was informed at the time of the levy that this furniture belonged to the plaintiff and not to her husband, and to find that after the levy and before the sale this attorney was notified that the title to the furniture was in the plaintiff and not in her husband, and was furnished with documentary evidence of such title. The alleged trespass consisted in wrongfully seizing the property of the plaintiff, wrongfully retaining the same, and wrongfully causing it to be sold to satisfy the debt of her husband. "The owner of personalty is entitled to the possession thereof. Any deprivation of such possession is a tort for which an action lies." Code, § 105-1701; *Vaughn* v. *Glenn,* 44 *Ga. App.* 426 (161 S. E. 672). "Any abuse of or damage done to the personal property of another, unlawfully, is a trespass for which damages may be recovered." § 105-1703. A trespass to personalty may be continuous, and it consists of any unlawful deprivation of its possession. This can be done by wrongful levy as well as by a wrongful sale. See *Raiford* v. *Hyde,* 36 *Ga.* 93 (2); *Gorham* v. *Hood,* 27 *Ga.* 299 (2); *Singer Sewing Machine Co.* v. *Rachell,* 8 *Ga. App.* 554 (69 S. E. 1134).

■ The charge to the jury, to the effect that irrespectively

of whether the furniture was wilfully levied on and sold, if the jury should find that it was the plaintiff's and not her husband's furniture, she would be entitled to recover any actual damage that flowed as the natural result to her from such sale of the furniture; and that if they found that the sale was under such circumstances as would authorize the imposition of exemplary damages in addition to actual damages, this was a matter in the jury's discretion; and that where the jury find that punitive damages are to be allowed, they should take into consideration any mitigating circumstances which would tend to lessen the punitive damages, was not error in that thereby the jury "could easily be led into the belief that if they did believe that title was in her, that alone was sufficient to authorize actual damages and punitive damages."

■ The evidence did not demand a finding that the plaintiff attempted to file a claim to this furniture in the attachment case; but the jury were authorized to find that her attorneys forwarded to the attorney for the defendant documentary evidence showing her title to the furniture, for the purpose of notifying the defendant through its attorney that the plaintiff owned this furniture; and the court did not err in charging the jury that the law relative to filing a claim as a remedy to recover personal property by the owner is cumulative and not exclusive, and that the owner of personal property can maintain an action of trespass against one levying on and selling his property as the property of another by virtue of an attachment against such other person. *Whittington* v. *Wright, 9 Ga. 23*; *Bodega* v. *Perkerson, 60 Ga. 516*; *Southern Ry. Co.* v. *Moore, 133 Ga. 806, 811 (67 S. E. 85, 26 L. R. A. (N. S.) 851)*. Neither did the court err in charging the jury that even if the defendant in good faith caused the levy to be made on the plaintiff's property and the same to be sold, the defendant would be liable for such actual damages as would flow to the plaintiff therefrom; and that as actual damages she would be entitled to recover the market value of the furniture. This charge was not error on the ground that there was no evidence on which the jury could base a finding as to the market value of the property at the time of its sale under the attachment levy, and therefore that they could not find any actual damages in her favor.

■ There was no error in giving in charge the rule as to exemplary or punitive damages in a case of this character, and in

instructing the jury that after they have determined what the facts are in the case, if they determined that the plaintiff is entitled to recover they should consider the two elements of damages contended for; that is, actual damages and punitive damages. Code, § 105-2002; *Investment Securities Cor.* v. *Cole,* supra.

■ The court did not err in instructing the jury, as to the admission in evidence of the policy of insurance which the plaintiff's husband had taken out in his own name on this furniture, that it was not admitted as absolute proof of title in the plaintiff's husband but only as a circumstance to be considered by the jury in determining where the title to the furniture was. This charge did not take away from the jury the right to consider the weight of the testimony in the case.

■ This case is not one where the entire injury was to the peace, happiness, and feelings of the plaintiff. The court did not err in refusing to charge, on request by the defendant, that the injury complained of, not being a personal tort but an injury to property, the plaintiff would not be entitled to recover exemplary or punitive damages unless it was shown to the jury that at the time of the commission of the trespass the embarrassment, humiliation, and imposition charged were such as to amount to a personal tort on the plaintiff, and that at the time of the levy or at the time of the commission of the trespass the plaintiff must have been present, and there must have been infliction of personal wrongs on her, before the jury could consider any exemplary or punitive damages in the case. Counsel for the defendant cite *Stovall* v. *Caverly,* supra, to sustain this ground of the motion for new trial. That decision was dealing with § 4504 of the Code of 1910 (Code of 1933, § 105-2003), and not with a case where damages were sought by reason of the provisions of § 105-2002, as is the case at bar.

■ The court did not err in refusing a request to charge the jury as follows: "Where an attorney at law representing a client in a particular suit is concerned, the law imposes upon him the duty to handle the same according to the best of his skill and ability. Where he does this, and there is no instruction to him from his client in the direction of his case as to the handling otherwise than as the attorney sees fit in the exercise of his skill and ability, there can be no exemplary or punitive damages chargeable to the

client, nor to the attorney. Therefore, if you believe that the attorney in this case . . was acting conscientiously in the discharge of his duty, believing that he had the right to handle the same as he did handle it, then there could be no recovery of punitive or exemplary damages." The request was properly refused. The attorney, at the time of the levy and at the time of the sale of the property, had notice that it belonged to the plaintiff and not to her husband. Under the law laid down in *Jones* v. *Lamon, Citizens Bank of Vidalia* v. *Citizens &c. Bank,* supra, and other authorities hereinbefore cited, such notice to the attorney was notice to his client, and from the facts in this case the jury were authorized to find exemplary damages in the plaintiff's favor.

Under the facts of this case and the principles of law heretofore laid down, there was no error in refusing to give a requested charge to the effect that where property is levied on under an apparently valid process, and a sale is had thereunder, it is presumed to be legal and valid; and where the proceeds of the sale are distributed to the person who "instigated the proceedings bringing about the sale, such person can not be chargeable with exemplary or punitive damages because of such sale; especially is this true where a person claims the property other than the defendant in fi. fa., and who has had notice and [been] given an opportunity to file a claim and stop the sale before it is made, and fails to do so." The plaintiff at the time of the attachment and sale of her property was in New York City. She was not bound to avail herself of the remedy provided by filing a claim to the property. The law provided that she could bring an action of trespass against the defendant and recover the actual damages sustained by her; and in a proper case, if the jury believed that the levy and sale were made with knowledge on the part of the defendant that the property belonged to the plaintiff and not to the defendant in attachment, the jury could award exemplary damages.

The request to charge, presented by the defendant, that proceedings under an execution are presumed to be valid, and that "therefore any proceedings thereafter by the levying officer have to go forward unless he is stopped from proceeding by either payment, the filing of a claim, illegality, or other means known to the law; and such . . officer having once made a levy would not have the right to hold the same up without being stopped in some

such way; hence such officer would not be subject to . . exemplary damages; and if not, the person who instigated the proceedings would not be," was not applicable under the law and the facts of this case. It was not error to refuse the request.

■ The court did not err in refusing to charge the jury, on request of the defendant, "that any trespass committed in this case would be the levying of the execution;" and that "if neither the levying officer nor the attorney representing the plaintiff in fi. fa. had any notice that the property belonged to any person other than the defendant in fi. fa., it would not be such trespass as would authorize the recovery of . . exemplary damages." This charge was not a correct statement of the law. As appears in division 6 of the opinion, a trespass to personal property does not consist of a wrongful levy thereon alone, but of "any unlawful deprivation" of possession of such property, which may be done by an unlawful sale thereof as well as an unlawful levy thereon.

■ The verdict, in so far as the jury found in the plaintiff's favor any sum as exemplary damages, is not necessarily grossly excessive, does not show that it was the result of prejudice, and is not without any evidence whatever to support it.

■ The verdict was for $1272.44. The jury were authorized to find that the market value of the furniture at the time of the sale, even in its used condition, was $600 or $700, and the remainder of the verdict, whatever that exact amount may be, was for punitive damages. It is not manifest that this amount, whatever the exact figure may be, was out of all reasonable proportion to the extent of the injury. The case does not fall within the ruling in *Investment Securities Cor.* v. *Cole,* 57 *Ga. App.* 97, 103 (supra), and cit. The judge did not err in overruling the motion for new trial.

*Judgment affirmed. Felton, J., concurs. Sutton, J., dissents.*