310 P.2d 805

Fred JAQUITH, Plaintiff-Respondent,

v.

A. G. STANGER, Defendant-Appellant.

No. 8511.

Supreme Court of Idaho.

April 30, 1957.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for appellant.

A. A. Merrill, Idaho Falls, for respondent.

TAYLOR, Justice.

During the summer of 1954, one, Phil Daniel, had operated a fruit stand on the highway in or near Idaho Falls, and during that season had become indebted to the defendant (appellant) for rental. In Sep-

tember, 1955, Daniel was employed by the plaintiff (respondent) and was operating a truck owned by the plaintiff to which was attached a refrigerated semi-trailer. This equipment was being used to haul peaches from the plaintiff's orchard near Caldwell to Idaho Falls. Defendant filed an action on his claim against Daniel in the probate court of Bonneville county and procured from that court a writ of attachment against the property of Daniel. On September 21st Daniel arrived in Idaho Falls with plaintiff's truck and trailer loaded with 400 bushels of tree-ripened peaches.

Although there is some conflict in the evidence, the jury's evident finding of the following facts as the basis of its verdict is supported by substantial and competent evidence. A deputy sheriff, armed with the summons and complaint and writ of attachment issued by the probate court, and accompanied by defendant's attorney, went to the trailer court, where the load of peaches had been temporarily parked. There the summons and writ of attachment were served upon Daniel by the deputy sheriff, and Daniel was advised by the deputy and the attorney that the truck and the peaches were attached and not to touch them because they were "tied up." Daniel told the deputy and the attorney that neither the truck nor the peaches belonged to him, but were the property of plaintiff; that the peaches were ripe and damage would occur if they were not taken care of. A market for the peaches at Idaho Falls was available on that day, where they were to have been sold at $4 per bushel.

After seeing an attorney and communicating with plaintiff by phone, Daniel left for Salt Lake City the same day. At Salt Lake he tried unsuccessfully to rent another truck. From there he went to Boise, and from Boise to Quincy, Washington, but was unable to locate or rent another truck at either place.

The sheriff did not actually take possession of the truck nor of the load of peaches, but left both at the trailer court where Daniel had parked the truck at the time the writ was served.

On September 26th defendant's attorney phoned the plaintiff at Caldwell concerning the truck and cargo, and was advised by plaintiff that both the truck and peaches belonged to plaintiff, not to Daniel. On September 27th, after a hearing, the probate court dissolved the attachment, on motion of the plaintiff. On the same day the deputy sheriff filed a return of the writ of attachment containing a lengthy recital of the activity of himself and defendant's attorney in pursuance of the writ, and concluding with the statement that he had notified the operator of the trailer court where the truck was parked, to inform Daniel "that there was no attachment upon any truck, fruit, or other personal property of Phil Daniel."

The evidence also shows that under date of May 27, 1955, in response to an inquiry

by him, defendant's attorney had been advised by the state department of law enforcement that plaintiff, Fred Jaquith, was the registered owner of the truck. On September 16, 1955, defendant Stanger had called Jaquith by phone and inquired as to ownership of the fruit Daniel was trucking. Defendant testified that plaintiff advised him the fruit belonged to Daniel. Plaintiff testified that he, in that conversation, told defendant the truck and peaches belonged to himself and not to Daniel. It was also testified that the peaches were worth $4 per bushel delivered in Idaho Falls, and that Daniel was paid by plaintiff on the basis of $1 per bushel for his services.

The peaches were unloaded on the afternoon of the 27th. Ninety-one bushels were sorted out and sold, as overripe, for preserving purposes, at $2 per bushel. The rest were spoiled.

Plaintiff brought this action for $1,236 damages to the peaches in the truck; for 1,000 bushels of peaches at $2 per bushel, 600 bushels of pears at $2.25 per bushel, and 300 bushels of prunes at $2 per bushel, all alleged to have been lost in the orchard by reason of the truck being attached, plaintiff being unable to rent another truck, and for that reason unable to market the fruit; and $250 attorney's fee for procuring dissolution of the attachment. Plaintiff also alleged that the attachment was malicious and prayed for $1,000 as exemplary damage.

Upon trial the jury returned a verdict for the plaintiff in the sum of $5,436, $1,000 less than the amount prayed for in plaintiff's complaint. From the judgment entered on the verdict, defendant prosecutes this appeal.

As to appellant's contention that he is not liable for either the acts of the officer or of his attorney in attempting to attach property belonging to plaintiff, there is evidence from which the jury could conclude that appellant authorized or knowingly approved their acts.

"Where the relation of attorney and client exists, the client is bound, according to the ordinary rules of agency, by the acts of his attorney, within the scope of the latter's authority. Accordingly, the client may be liable for a trespass committed by his attorney that he in no way authorized, except by his general employment of the attorney, or for the tortious institution, continuation, or prosecution of legal proceedings to enforce the client's claim. 5 Am.Jur. p. 298, § 67; American Law Institute, Restatement, Agency, p. 564, § 253. A client may be liable where his attorney, in the course of his employment, causes an attachment to be sued out against the debtor of the client, and levied upon property of one other than the debtor as the property of the debtor. Williams v. Inman, 1 Ga.App. 321, 57 S.E. 1009." Atlantic Co. v.

Farris, 62 Ga.App. 212, 8 S.E.2d 665, at page 669.

Appellant's principal contention upon this appeal is that, in failing to take actual possession and custody of the truck and its cargo of peaches, the deputy sheriff did not comply with the statute, § 8–506, subsection 3, I.C.; that there was therefore no attachment actually made and consequently no damage for which defendant could be held to answer. In support of this contention appellant cites such cases as Falk-Bloch Mercantile Co. v. Branstetter, 4 Idaho 661, 43 P. 571; American Fruit Growers, Inc., v. Walmstad, 44 Idaho 786, 260 P. 168; and similar cases from other jurisdictions. These cases hold in effect that in attaching personal property capable of manual delivery, the officer must actually seize and hold the property to the exclusion of others, in order to create and maintain the lien of attachment. Examination of these cases, however, indicates that they involved contests between the attaching creditor and other encumbrancers or claimants whose rights depend upon the validity or priority of the lien of the attachment. Such a question is not involved in this case.

This is an action for damages for trespass to the personal property of the plaintiff. It does not depend upon the validity of the attachment proceedings against the debtor, Daniel, nor upon the validity of any purported attachment lien in favor of the creditor Stanger. It is sufficient in this case that the officer and the attorney for the creditor, armed with a summons and writ of attachment actually ousted the plaintiff from the possession and control of the truck and peaches. This was an invasion of plaintiff's right of property for which the defendant is liable whether the officer and attorney perfected an attachment lien or not. Atlantic Co. v. Farris, 62 Ga.App. 212, 8 S.E.2d 665; 87 C.J.S. Trespass §§ 8, 9, 10; 52 Am.Jur., Trespass, § 10.

Neither is this an action for wrongful attachment under the statute, § 8–503, I.C., nor a case in which the plaintiff was entitled to appear in the probate court and move for dissolution pursuant to § 8–534, I.C. The rights and remedies given by those statutes are available only to the defendant in the case in which the attachment is issued. Plaintiff was, therefore, not entitled to recover his expenses incurred in prosecuting his motion for dissolution in the probate court. His remedy in that regard was either by way of intervention in the attachment case, § 5–322, I.C., or by third party claim under §§ 8–532 and 11–203, I.C.

The next question is the sufficiency of the proof of the damages claimed. The $1,236, loss of 309 bushels of peaches spoiled in the truck, is amply supported. Plaintiff apparently has not sought to recover the loss of $2 per bushel on the 91 bushels salvaged.

Appellant contends the claimed loss of peaches, pears and prunes at the orchard is too remote, speculative and not a proper element or measure of damage available to plaintiff. Generally, plaintiff's damage in such case would be limited to the rental value of the truck and trailer. 25 C.J.S. Damages § 83 c.

■ Here, however, it is shown that the truck was especially equipped for the use for which it was kept by plaintiff and such as could not readily be replaced by hiring another. In such circumstances if the plaintiff made reasonable effort to procure the services of another suitable truck and was unable to do so, it would appear there was no market fixing a reasonable value of the use of such equipment and plaintiff's damage would be measured by his consequential loss to the fruit which could and would have been delivered to market had he not been dispossessed of his own truck.

"Where no substitute motor vehicle can be hired in the market while plaintiff's vehicle is being repaired, it is proper to award the amount of profits lost in his business as a result of the deprivation of the use of his vehicle as the measure of damages therefor, where they can be clearly and certainly established.

\*   \*   \*   \*   \*   \*

"The best evidence of the damage suffered by detention of a vessel is the sum for which vessels of the same size and class can be chartered in the market. In the absence of such a market value, the value of the use of the vessel to her owner in the business in which she was engaged at the time of the detention is a proper basis for estimating damages." 25 C.J.S. Damages § 83 c, p. 602.

■ It was, therefore, proper to receive evidence of the consequential damage suffered by plaintiff to the fruit in the orchard. However, we think the evidence admitted does not support the verdict. The testimony is to the effect that 1,000 or more bushels of peaches, 600 or more bushels of pears, and 300 or more bushels of prunes fell to the ground and were lost during the time the truck was detained in Idaho Falls. The plaintiff and his wife both testified the peaches were worth $2 per bushel, and pears $2.25 per bushel, and the prunes $2 per bushel, at the orchard. Mrs. Jaquith testified she was selling peaches picked and packed at that time at the orchard for $2 per bushel; that it cost 25¢ per bushel for picking and 30¢ to 35¢ per bushel for packing the peaches. There was no testimony as to the cost of picking and packing pears or prunes. The peaches which fell to the ground were neither picked nor packed and hence plaintiff did not incur those costs. That would reduce his loss on the peaches lost in the orchard to $1.40 or $1.45 per bushel. But presumably this loss could have been avoided by picking, packing and

selling the peaches at the orchard for $2 per bushel. No evidence was offered by the plaintiff as to why this was not done. If it was because there was not a sufficient market at the orchard for the entire crop, there is no evidence to that effect. If there was not a sufficient market at the orchard, and plaintiff's loss was occasioned by the want of transportation to some other market, the evidence does not show what could have been obtained at a distant market, except that at Idaho Falls the peaches on the truck were worth $4 per bushel. Whether the Idaho Falls market would absorb plaintiff's entire crop does not appear, nor does it appear what value the fruit would have had at some other market. On the Idaho Falls market plaintiff's net return on the peaches after paying Daniel would have been $3 per bushel. The difference between that and $2 at the orchard, or $1 per bushel, would be the amount of his loss for want of transportation. As to the pears and prunes, no market value was testified to at any point other than the orchard. Whether there was an available market for them at the orchard does not appear. If there was such a market the loss claimed was not a result of the seizure of the truck. The evidence is, therefore, insufficient to sustain the judgment for consequential damage to fruit in the orchard.

Judgment is affirmed in the amount of $1,236 for damage to the fruit on the truck at the time of the service of the writ, and and is reversed and vacated as to other items of damage included in the verdict, and the cause is remanded with directions to the district court to reduce the judgment to $1,236, plus costs, and in that amount the judgment is affirmed.

Costs to appellant.

KEETON, C. J., and PORTER, SMITH and McQUADE, JJ., concur.